UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES RAY KIRKENDOLL, SR., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW SAUL, <br><br> Defendant. | Case No. 18-cv-07649-JSC <br><br> **ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT** <br><br> Re: Dkt. Nos. 16, 23 |

Plaintiff James Ray Kirkendoll, Sr. seeks social security benefits for a variety of physical and mental impairments including shoulder, back and neck problems, and depression. (Administrative Record ("AR") 17, 189.) Pursuant to 42 U.S.C § 405(g), Plaintiff filed this lawsuit for judicial review of the final decision by the Commissioner of Social Security ("Commissioner") denying his benefits claim. Now before the Court are Plaintiff's and Defendant's Motions for Summary Judgment.[1] (Dkt. Nos. 16 & 23.[2]) Because the Administrative Law Judge ("ALJ") failed to provide specific and legitimate reasons supported by substantial evidence for his weighing of the medical evidence, the Court GRANTS Plaintiff's motion, DENIES Defendant's cross-motion, and REMANDS for further proceedings consistent with this Order.

**BACKGROUND**

Plaintiff filed an application for disability insurance benefits on February 17, 2016 alleging a disability onset date of March 2, 2011. (AR 169.) His application was denied both initially and

---

[1] Both parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C § 636(c). (Dkt. Nos. 10 & 12.)

[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

1  upon reconsideration. (AR 17.) Plaintiff then submitted a written request for a hearing before an ALJ and his hearing was held before Judge Vincent Misenti on August 9, 2017. (AR 35.) On December 28, 2017, the ALJ issued a decision finding that Plaintiff was not disabled. (AR 17-28.) The ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the cervical and lumbar spine, status post lumbar fusion surgery, impingement syndrome of the bilateral shoulders, depressive disorder, and anxiety disorder. The ALJ also found, however, that he did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. (AR 19-21.) The ALJ then determined that Plaintiff had the residual functional capacity ("RFC") to perform light work with certain limitations. (AR 21.) In light of that RFC finding, the ALJ concluded that Plaintiff was not disabled because he was capable of performing jobs existing in significant numbers in the national economy. (AR 28.)

Plaintiff filed a request for review of the ALJ's decision which was denied on October 23, 2018 making the ALJ's decision the Commissioner's final decision. (AR 1-3.) After the Appeals Council denied review, Plaintiff sought review in this Court. (Dkt. 1.) In accordance with Civil Local Rule 16-5, the parties filed cross-motions for summary judgment (Dkt. Nos. 16, 23), which are now ready for decision without oral argument.

**ISSUES FOR REVIEW**

1. Did the ALJ err in according reduced weight to Plaintiff's treating physician Dr. Fine?
2. Is the ALJ's Step Five determination supported by substantial evidence?
3. Must the Court remand the action for a new hearing before a different ALJ because the ALJ was not appointed under the Appointments Clause?

**LEGAL STANDARD**

A claimant is considered "disabled" under the Social Security Act if he meets two requirements. *See* 42 U.S.C. § 423(d); *Tackett v. Apfel,* 180 F.3d 1094, 1098 (9th Cir. 1999). First, the claimant must demonstrate "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C § 423(d)(1)(A). Second, the impairment or impairments must be

2

severe enough that he is unable to do his previous work and cannot, based on his age, education, and work experience "engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis, examining: (1) whether the claimant is engaging in "substantial gainful activity"; (2) whether the claimant has a severe medically determinable physical or mental impairment" or combination of impairments that has lasted for more than 12 months; (3) whether the impairment "meets or equals" one of the listings in the regulations; (4) whether, given the claimant's RFC, the claimant can still do her "past relevant work"' and (5) whether the claimant "can make an adjustment to other work." *Molina v. Astrue,* 674 F.3d 1104, 1110 (9th Cir. 2012); *see also* 20 C.R.F. §§404.1520(a), 416.920(a).

An ALJ's "decision to deny benefits will only be disturbed if it is not supported by substantial evidence or it is based on legal error." *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks and citation omitted). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks and citation omitted). "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Id.* In other words, if the record "can reasonably support either affirming or reversing, the reviewing court may not substitute its judgment for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec.,* 740 F.3d 519, 523 (9th Cir. 2014) (internal quotation marks and citation omitted). However, "a decision supported by substantial evidence will still be set aside if the ALJ does not apply proper legal standards." *Id.*

**DISCUSSION**

**A. The ALJ's Evaluation of the Medical Evidence**

Plaintiff contends that the ALJ erred in giving reduced weight to his treating physician Dr. Frank Fine. In the Ninth Circuit, courts must "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (as amended (Apr. 9, 1996)). A treating physician's opinion is entitled to more weight than that of an

3

examining physician, and an examining physician's opinion is entitled to more weight than that of a nonexamining physician. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). The ALJ must provide "clear and convincing" reasons for rejecting an uncontradicted opinion of an examining physician and "specific and legitimate reasons" supported by substantial evidence for rejecting the opinion of a treating physician that his contradicted by another doctor. *Lester*, 81 F.3d at 830-31.

Here, the ALJ gave reduced weight to Dr. Fine's opinions that Plaintiff was precluded from repetitively rotating his neck; holding his neck in a sustained position upward or downward; pushing, pulling, or lifting more than five-to-ten pounds at or above shoulder height; and repetitively gripping or grasping with both upper extremities. (AR 25 citing AR 838 (May 30, 2014 opinion); AR 1316 (May 23, 2017 opinion) AR 1318 (October 6, 2016 opinion).[3]) In doing so, the ALJ concluded that

> the imaging findings and clinical examination findings with his treatment, improvement with treatment, and reported activities, the undersigned finds these limitations over-restrictive. Notably, the claimant admitted to the ability to lift 15 pounds (Hearing Testimony). Moreover, he consistently exhibits a normal gait and full motor strength in his lower extremities.

(AR 25.)

It is undisputed that Dr. Fine is the only physician to have opined on limitations regarding Plaintiff's neck, and as such, the ALJ was required to offer clear and convincing evidence for rejecting his opinion that Plaintiff was precluded from repetitively rotating his neck or holding his neck in a sustained position. The state agency medical consultants' opinions regarding Plaintiff's lifting limitations contradicted that of Dr. Fine as they limited Plaintiff to 20 pounds occasionally and 10 pounds frequently. (AR 73, 86.) The ALJ was thus required to provide specific and legitimate reasons for rejecting Dr. Fine's lifting limitation. As discussed below, the Court concludes that the ALJ's findings fail to satisfy even the lesser specific and legitimate standard.

First, "[a]n ALJ can satisfy the substantial evidence requirement by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation

---

[3] The ALJ states that he is relying on an October 2015 opinion from Dr. Fine. (AR 25.) But the only opinion in the record at Exhibit 11F (which is what the ALJ cites) is a May 20, 2014 opinion. (AR 838.) The Court assumes that this is the opinion to which the ALJ is referring.

4

thereof, and making findings. The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (internal citations and quotation marks omitted). Here, rather than doing so, the ALJ relied on unspecified "imaging findings and clinical examination findings with his treatment." (AR 25.) The ALJ's statement is not supported by *any* cites to the over 1300-page record.[4] To the extent that the Commissioner now identifies record citations to support the ALJ's statement, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Commissioner of Social Security Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009).

Second, the ALJ relied on Plaintiff's improvement with treatment—again, without record citation. In any event, the record does not support that Plaintiff's neck pain and range of movement improved over time. While Plaintiff experienced some improvement of his overall condition after he completed several months of physical therapy in July 2012, he continued to experience neck pain and limited range of motion. (AR 569-571.) In August 2012, he was referred to a neurologist for an evaluation who noted that his neck was tender and that he had reduced range of motion (in addition to his spine and shoulder issues). (AR 574-575.) Throughout 2013, Plaintiff's treatment notes evidence persistent neck pain and reduced range of motion. (AR 602, 621, 630, 652, 660, 663.) In July 2013, Dr. Jakubowski noted that "Mr. Kirkendoll continues to have neck and left shoulder pain that limits his ability to return to work as a truck driver." (AR 652.) In May 2014, at his first visit with Dr. Fine, Plaintiff reported "constant neck pain, headaches, stiffness, muscle spasms across his neck and shoulder girdle areas, bilateral shoulder pain and [] difficulty trying to raise his arms at or above shoulder height, push, pull, or lift." (AR 835.) Plaintiff reported that "for the most part he has been managing his chronic pain with methadone 20 mg 3 times daily, Norco for breakthrough pain, and using Flexeril

---

[4] While the ALJ's opinion elsewhere discusses imaging findings and clinical examination findings, those were with respect to Plaintiff's cervical and lumbar spine, lower extremities, and his shoulders—not his neck. (AR 22-23.)

5

for muscle spasms." (*Id.*) Upon examination, Dr. Fine noted that Plaintiff had limited range of motion in his neck: he could only rotate to the left about 20 degrees, and flex and extend 10 degrees. (AR 837.) Dr. Fine's subsequent reports from October 2016 and May 2017 are consistent. (AR 1316 (5/23/17: neck range is very limited); AR 1318 (10/6/16: neck range in limited in all planes).) Further, in 2014, 2016, and 2017 Plaintiff put his pain at 8/10 and indicated that, at best, it was at either 4 or 5/10 with medication. (AR 833, 1316, 1318.) Substantial evidence thus does not support the ALJ's conclusion that Plaintiff's condition improved with treatment. Even if the record shows periods of improvement—such as when Plaintiff completed his physical therapy—"the ALJ was required [] to examine this evidence in the broader context of [Plaintiff's] impairment." *Attmore v. Colvin*, 827 F.3d 872, 877 (9th Cir. 2016); *see also Holohan v. Massanari*, 246 F.3d 1195, 1207-08 (9th Cir. 2001) ("An ALJ may not cherry-pick and rely on portions of the medical record which bolster his findings.").

Third, the ALJ relied on Plaintiff's reported activities, but, again, the ALJ failed to cite to any specific activities which undermine Dr. Fine's opinion regarding Plaintiff's functional limitations. Elsewhere in his opinion the ALJ cited to Plaintiff's activities of playing pool, playing cards, attending car shows, attending church, shopping in stores, and preparing simple meals. (AR 23, 24.) The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). That Plaintiff drives his car, attends church, goes shopping in stores, and prepares his own simple meals, does not mean he does not suffer from extreme neck pain. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("[M]any home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication."). Further, the ALJ ignored Plaintiff's caveats with respect to playing pool that if he does so, then he "won't be coming out for the next two or three days" and if he goes to car shows, he "take[s] a chair out and [] sit[s] down." (AR 59-60.)

Accordingly, Plaintiff's activities are not a specific and legitimate reason supported by substantial evidence for assigning reduced weight to Dr. Fine's opinion.

Fourth, the ALJ relied on Plaintiff's statement at the hearing that he was able to lift 15 pounds as a basis for discounting Dr. Fine's opinion that Plaintiff could only lift 5-10 pounds. However, Plaintiff testimony that he could lift "15 maybe" is not inconsistent with Dr. Fine's opinion regarding how many pounds Plaintiff could lift *repetitively*. Plaintiff was not asked about repetitive lifting at the hearing.

Finally, the ALJ relied on Plaintiff "consistently exhibit[ing] a normal gait and full motor strength in his lower extremities"—again, without record citation. (AR 25.) Dr. Fine's opinion, however, focused on Plaintiff's upper extremities. The ALJ does not explain—and it is not at all apparent—what Plaintiff's gait or lower extremities have to do with limitations associated with Plaintiff's neck and how limitations thereon affect Plaintiff's upper extremities. Given this, the ALJ's finding regarding Plaintiff's gait and lower extremities is a not a legitimate reason supported by substantial evidence for rejecting Dr. Fine's opinion. *See Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) ("The ALJ's reason for rejecting Dr. Doerning's opinion—that the record did not contain evidence of 'decreased range of motion' or 'neurological deficits'—is not 'legitimate' because it is not responsive to Dr. Doerning's opinion based on Orn's respiratory problems.").

In sum, the ALJ failed to provide specific and legitimate reasons supported by substantial evidence for assigning reduced weight to Dr. Fine's opinion.

\* \* \*

Because the ALJ's consideration of the medical evidence was not supported by substantial evidence, the ALJ's decision cannot stand. Given this, the Court need not consider Plaintiff's additional arguments regarding the ALJ's analysis at Step Five. The ALJ's error goes to the heart of the disability determination and is not harmless. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) ("An error is harmless if it is inconsequential to the ultimate nondisability determination, or if the agency's path may reasonably be discerned, even if the

1 agency explains its decision with less than ideal clarity.") (internal quotation marks and citations omitted); *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006) ("[A] reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.").

### B. Remand

Plaintiff contends remand is required where, as here, a revised RFC could result in a limitation to sedentary work which would result in a finding of disability given Plaintiff's advanced age. However, Plaintiff insists that the matter should be remanded to a different ALJ because the ALJ was not properly appointed under the Constitution and therefore lacked legal authority to hear and decide his case under *Lucia v. Securities and Exchange Commission*, 138 S. Ct. 2044 (2018). In *Lucia*, the Supreme Court held that ALJs of the Securities and Exchange Commission ("SEC") are "Officers of the United States," subject to the Appointments Clause of Article II of the United States Constitution. *Lucia*, 138 S. Ct. 2055. *Lucia* also held that the appropriate remedy to a timely challenge "before the Commission" was a new hearing before a different ALJ that was properly appointed. *Id*. at 2055.

Defendant argues that Plaintiff failed to make a timely challenge to the validity of the ALJ appointment because the issue was not raised before the ALJ or the Appeals Council. As the Court has decided that the case must be remanded for a new hearing based on the merits, it need not decide whether an *additional* ground for remand is the Appointments Clause. If the Commissioner decides to have the same ALJ conduct Plaintiff's hearing upon remand, Plaintiff can argue that a new ALJ must hear the case at that time. *See Lucia*, 138 S.Ct. at 2055 (noting that that even if the original ALJ subsequently received a constitutional appointment, he could not hear the plaintiff's case upon remand because "[h]e cannot be expected to consider the matter as though he had not adjudicated it before").

//

//

//

8

**CONCLUSION**

For the reasons stated above, Plaintiff's motion for summary judgment is GRANTED, the Commissioner's motion is DENIED, and the matter is REMANDED to the Commissioner for proceedings consistent with this Order.

**IT IS SO ORDERED.**

Dated: January 28, 2020

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge